UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____

EMMY TAYLER,

    *Plaintiff*,

v.

JULIE K. BROWN and
HARPERCOLLINS PUBLISHERS LLC,

    *Defendants*.

_____/

## COMPLAINT

Plaintiff Emmy Tayler sues Defendants Julie K. Brown and HarperCollins Publishers LLC for publishing false and defamatory statements in the book, *Perversion of Justice: The Jeffrey Epstein Story*.

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff Emmy Tayler ("Plaintiff" or "Tayler") is a citizen of the United Kingdom.

2. Defendant Julie K. Brown ("Brown") is a Florida citizen and the author of *Perversion of Justice*: *The Jeffrey Epstein Story*.

3. Defendant HarperCollins Publishers LLC ("HarperCollins"), the publisher of *Perversion of Justice: The Jeffrey Epstein Story* is a Delaware limited liability company with its principal place of business in New York.

4. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(a), as the amount in controversy exceeds $75,000.00 and Plaintiff, a citizen of the United Kingdom, and Defendants, citizens of Florida and New York, and are diverse.

5. This Court has personal jurisdiction over Defendants under the Florida long-arm

1

statute, § 48.193(a), (b), Florida Statutes, and the Due Process Clause of the United States Constitution.

6. Venue is also proper in this Court because a substantial part of the events giving rise to the claim occurred in this District.

## FACTUAL BACKGROUND

7. On or around July 20, 2021, HarperCollins published a book written by Defendant Julie K. Brown entitled: "*Perversion of Justice: The Jeffrey Epstein Story*" ("*Perversion of Justice*" or the "Book").

8. Despite claiming that the *Perversion of Justice* was the product of serious investigative journalism by an award-winning Miami Herald journalist who has written extensively about the Epstein scandal, Defendants defamed Plaintiff by falsely identifying her as a co-conspirator, aider and abettor, facilitator and/or assistant in Jeffrey Epstein's sexual abuse pyramid scheme.

9. *Perversion of Justice* was marketed by the Defendants as a "definitive account of the Epstein case" and contained an "author's note," which states that "all information contained in this book is from my own reporting and interviews[1] or court or government records," thus presenting the Book as one that could be trusted by readers as an authoritative source of information.

10. The Book, however, falsely stated that Plaintiff worked for and arranged Jeffrey Epstein's "massage" schedule in 2005 when he was a prolific pedophile who regularly sexually abused underage girls under the guise of paying them to receive "massages." This defamatory statement therefore falsely paints Plaintiff as a co-conspirator and aider and abettor of Epstein who facilitated the pedophilia of a notorious child abuser. In particular, the defamatory statements are as follows:

---

[1] On this point, it bears noting that Brown never attempted to approach Plaintiff for an interview; instead, Defendants elected to defame Plaintiff without regard for the dire consequences she would suffer.

2

Shortly thereafter, a silver-haired man with a long face and bushy eyebrows entered the kitchen, along with a young woman who appeared to be about Haley's[2] age. His name was Jeffrey. The young woman's name, police would later learn, was Emmy Tayler. At the time, Tayler arranged Epstein's massage schedule and also worked as Maxwell's assistant. After the introductions, Tayler led Jane Doe 1 up a spiral staircase from the kitchen to a master bedroom and bath. Jane told police she became anxious as Tayler put up a folding massage table and laid out a bunch of oils. "Jeff will be up in a minute", she told Jane. There has been nothing to suggest that Tayler was aware of what happened in the room nor that she participated in any sexual activity.

"There was a big bathroom. I mean it was humongous," Jane told police. "Like a zillion people could be in that shower…and there was the big couch in there, it was pink and green. Hot pink and green. And a table with a phone on it. And during the massage he made a phone call but I don't remember what he said. He just said, like, four words and then hung up."

She figured she could be in and out of there with her money after a quick massage, but as Epstein ended the call, he firmly ordered her to take off all her clothes.

Suddenly, she realized she was all alone, and that no one except Haley knew where she was. Robson was nowhere to be seen. She feared what this creepy man was going to do to her. She nervously disrobed, leaving only her bra and panties on.

"I didn't know what to do because I was the only one up there, so I just took off my shirt and I was in a bra, and when he came in, and had a towel over him, he was like, 'No, take off everything." And he said, 'Now you can get on my back."

Jane Doe 1[3] told police Epstein directed her to straddle him as he laid on his stomach. He instructed her to rub his back by moving her hands in a circular fashion, clockwise.

He then told her to climb down, and he rolled over and dropped his towel, exposing himself. He began stroking his penis with one hand, while reaching over with his other hand to fondle her breasts under her bra. He placed a vibrator between her legs. She was disgusted by his hairy back and thought that he must have been on steroids because his body was muscular but his penis was egg-shaped and small.

As she told Pagan the story, Jane Doe 1 wept and pressed her finger hard against her thigh, recalling how Epstein admired her body and told her how she was sexually arousing him.

"It was disgusting, and I couldn't and I couldn't even look," she said.

Epstein asked her how she knew Haley, how old she was, what grade she was in,

---

[2] Hayley Robson has also sued Brown for defamation for false statements contained in the Book.

[3] Jane Doe 1's police report of this incident catalyzed law enforcement's investigation of Epstein.

3

and what school she went to. She lied, telling him she was an eighteen-year-old senior at Wellington High School.

It was not clear how long she was in the room, but after he ejaculated, he ordered her to get dressed and gave her three hundred dollars. He told her to leave her name and phone number with his assistant. And then he went into the shower.

11. In fact, Plaintiff did not even live in Palm Beach, Florida in 2005 and was not Epstein's assistant, and she never led fourteen-year-old Jane Doe 1 to Epstein's "massage" lair in order for him to sexually abuse this child.

12. From 1997 to 2001, Plaintiff was employed in London and then New York as an assistant to Ghislaine Maxwell. In 2002, she moved to Los Angeles. In 2007, she returned to the UK, where she now resides and is a sole caregiver for a close family member.

13. To be clear, Plaintiff was not employed by Maxwell at the time of the said 2005 incident with Jane Doe 1 in Palm Beach, Florida described in the Book, and, in fact, was living and working in Los Angeles, California at the time of the incident.

14. Indeed, the 2006 Palm Beach Police Department Report the Book purports to partially rely on contains no such allegations against Plaintiff. The Police Report contained details of the Jane Doe 1 incident but named Sarah Kellen (who was in fact Epstein's assistant in 2005) as the individual who had shown Jane Doe 1 to Epstein's bedroom and included details that are almost identical to those in the Book.

15. Furthermore, HarperCollins has even conceded that the Book falsely identified Plaintiff in the above-cited passage.

16. Prior to the Book's publication, Plaintiff's representatives contacted HarperCollins and were falsely informed that: "the only reference to your client in the Book is as someone who did administrative work."

17. In an apparent response to Plaintiff's attempt to prevent the very defamation at the crux of this case, Defendants included a tacked-on "disclaimer" in the Book regarding Plaintiff.

4

Specifically, Defendants stated that "[t]here has been nothing to suggest that Tayler was aware of what happened in the room nor that she participated in any sexual activity." This statement, however, did not dispel the defamatory statements that identified Plaintiff as a co-conspirator, aider and abettor, assistant and facilitator of Epstein's sexual abuse of a fourteen-year-old child.

18. Furthermore, despite Plaintiff's repeated requests, Defendants have refused to recall the Book and have failed to take sufficient steps to ensure that it is no longer available to purchase or otherwise publicly available.[4]

19. Because of these defamatory statements, Plaintiff's reputation has been gravely damaged, and she has been caused enormous and continuing distress, hurt, humiliation, and embarrassment.

20. In particular, Plaintiff's mental anguish and suffering were exacerbated as a result of Defendants' defamation. Plaintiff fears leaving her home, her mental health was and continues to be severely impacted as a result of the Defendants' defamation, and she has suffered severe panic attacks. Her insomnia has been significantly aggravated and is now severe. These effects have diminished Plaintiff's ability to act as a sole caregiver for her immediate family member. In addition, the effect on the immediate family member has increased the distress to Plaintiff.

21. As a result of her increased fear for her safety, Plaintiff has been forced to put in place increased security measures.

## COUNT I
### Defamation
### (All Defendants)

22. Plaintiff repeats and realleges the allegations preceding the first count of this Complaint as though fully set forth herein.

---

[4] Upon receiving a demand from Plaintiff, Defendants partially removed the defamatory statements from electronic and audio iterations of the Book, and also removed a sample of the Book containing the defamatory statements from its website, but HarperCollins has since reinstated the sample containing the defamatory statements on its website.

23. Defendants published statements purported to be "facts" in an intentionally false, malicious, negligent or otherwise defamatory manner, or with knowledge that the statements were false or with reckless disregard of the truth, and distributed the same in Florida and throughout the world.

24. All of the defamatory statements as set forth above published by Defendants concerning Plaintiff Tayler are false and defamatory per se.

25. Defendants specifically and unambiguously stated that Plaintiff Tayler was working for Epstein in 2005 and arranged his "massage" schedule to facilitate his sexual abuse of young girls. This is false.

26. Defendants also specifically and unambiguously stated that Plaintiff Tayler was present when fourteen-year old Jane Doe 1 was in Epstein's house, that Plaintiff led Jane Doe up the stairs to Epstein's cavernous bathroom and master bedroom, put out a folding massage table and laid out oils, leaving her alone with predator Epstein, who then sexually abused this child. This is false (except for Epstein's sexual abuse of Jane Doe 1).

27. Defendants caused the false and defamatory statements to be published with negligence, knowledge of the statements' falsity and/or with reckless disregard for the truth.

28. Defendant knew and/or intended that the defamatory statements would be widely disseminated in the United States and around the world.

29. Defendants' statements had, and continue to have, a defamatory effect, because they have resulted in damage to the reputation and community standing of Plaintiff Tayler. The Book is still freely available within Plaintiff's local community – and worldwide – despite Defendants' knowledge that Plaintiff never facilitated Epstein's sexual abuse of fourteen-year old Jane Doe 1.

30. Furthermore, Plaintiff Tayler has suffered, and will continue to suffer shame, humiliation, mental anguish, and hurt feelings as a result of Defendants' statements. In particular,

Defendants' statements have severely impacted and affected Plaintiff Tayler's mental health.

WHEREFORE, Plaintiff Emmy Tayler respectfully requests that judgment be entered in her favor and against Defendants for (a) damages, including, but not limited to, compensatory and consequential damages, (b) an order enjoining Defendants to remove all defamatory statements concerning Plaintiff from the Book and to take reasonable steps to recall prior versions of the Book from the market, and (c) any and all such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury of all issues so triable.

Dated:  July 19, 2022

    Respectfully submitted,

**AXS LAW GROUP, PLLC**
2121 NW 2nd Ave, Suite 201
Miami, Florida 33127
Telephone: (305) 297-1878

By: */s/ Jeffrey Gutchess*
Jeffrey W. Gutchess, Esq.
Florida Bar No. 702641
jeff@axslawgroup.com
Courtney Caprio
Florida Bar No. 933961
courtney@axslawgroup.com
Joanna Niworowski
Florida Bar. No. 1031440
joanna@axslawgroup.com
eservice@axslawgroup.com

*Counsel for Plaintiff*